**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| JOHN THOMPSON, | ) Case No. |
| Plaintiff, | ) |
| v. | ) **COMPLAINT FOR VIOLATIONS** |
| HAWAIIAN HOLDINGS, INC., LAWRENCE S. HERSHFIELD, PETER R. INGRAM, WENDY A. BECK, EARL E. FRY, C. JAYNE HRDLICKA, MICHAEL E. MCNAMARA, CRYSTAL K. ROSE, CRAIG E. VOSBURG, RICHARD N. ZWERN, DANIEL W. AKINS, MARK D. SCHNEIDER, and DUANE E. WOERTH, | ) **OF THE FEDERAL SECURITIES LAWS** ) ) **JURY TRIAL DEMANDED** |
| Defendants. | ) |

Plaintiff John Thompson ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against Hawaiian Holdings, Inc. ("Hawaiian" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the proposed acquisition of the Company by Alaska Air Group, Inc. ("Alaska Air").[1]

2. On December 2, 2023, Hawaiian entered into an Agreement and Plan of Merger (the "Merger Agreement") with Alaska Air and its wholly owned subsidiary Marlin Acquisition

---

[1] The proposed business combination described herein is referred to as the "Proposed Transaction."

Corp. The Merger Agreement provides that Hawaiian stockholders will receive $18.00 in cash per share of Company common stock in connection with the Proposed Transaction.

3. The Company's corporate directors subsequently authorized the January 9, 2024, filing of a materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Company stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights, among other things.[2]

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question

---

[2] The Special Meeting at which stockholders are asked to approve Proposed Transaction currently is scheduled for February 16, 2024.

jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District or is an individual with sufficient minimum contacts with this District to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9. Plaintiff is, and has been at all times relevant hereto, the owner of Hawaiian common stock.

10. Defendant Hawaiian is a Delaware corporation with its principal executive offices located at 3375 Koapaka Street, Suite G-350, Honolulu, Hawaii 96819. Hawaiian's shares trade on the Nasdaq Global Select Market under the ticker symbol "HA." Hawaiian is a holding company whose primary asset is sole ownership of all issued and outstanding shares of common stock of Hawaiian Airlines, Inc. ("Hawaiian Airlines"). Hawaiian Airlines is Hawaii's biggest and longest-serving airline. Hawaiian Airlines offers approximately 150 daily flights within the Hawaiian Islands and nonstop flights between Hawaii and 15 U.S. gateway cities, as well as service connecting Honolulu and American Samoa, Australia, Cook Islands, Japan, New Zealand, South Korea, and Tahiti.

11. Defendant Lawrence S. Hershfield is and has been Chairman of the Board and a director of the Company at all times relevant hereto.

12. Defendant Peter R. Ingram is and has been President, Chief Executive Officer, and director of the Company at all times relevant hereto.

13. Defendant Wendy A. Beck is and has been a director of the Company at all times relevant hereto.

14. Defendant Earl E. Fry is and has been a director of the Company at all times relevant hereto.

15. Defendant C. Jayne Hrdlicka is and has been a director of the Company at all times relevant hereto.

16. Defendant Michael E. McNamara is and has been a director of the Company at all times relevant hereto.

17. Defendant Crystal K. Rose is and has been a director of the Company at all times relevant hereto.

18. Defendant Craig E. Vosburg is and has been a director of the Company at all times relevant hereto.

19. Defendant Richard N. Zwern is and has been a director of the Company at all times relevant hereto.

20. Defendant Daniel W. Akins is a Special Preferred Stock Designee and is and has been a director of the Company at all times relevant hereto.

21. Defendant Mark D. Schneider is a Special Preferred Stock Designee and is and has been a director of the Company at all times relevant hereto.

22. Defendant Duane E. Woerth is a Special Preferred Stock Designee and is and has been a director of the Company at all times relevant hereto.

23. Defendants identified in paragraphs 11-22 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

24.     On December 3, 2023, Alaska Air and the Company jointly announced in relevant part:

> SEATTLE and HONOLULU, Dec. 3, 2023 /PRNewswire/ – Alaska Air Group, Inc. (NYSE: ALK), and Hawaiian Holdings, Inc. (NASDAQ: HA) today announced that they have entered into a definitive agreement under which Alaska Airlines will acquire Hawaiian Airlines for $18.00 per share in cash, for a transaction value of approximately $1.9 billion, inclusive of $0.9 billion of Hawaiian Airlines net debt. The combined company will unlock more destinations for consumers and expand choice of critical air service options and access throughout the Pacific region, Continental United States and globally.  The transaction is expected to enable a stronger platform for growth and competition in the U.S., as well as long-term job opportunities for employees, continued investment in local communities and environmental stewardship.
>
> As airlines rooted in the 49th and 50th U.S. states, which are uniquely reliant upon air travel, Alaska Airlines and Hawaiian Airlines share a deep commitment to caring for their employees, guests and communities.  This combination will build on the 90+ year legacies and cultures of these two service-oriented airlines, preserve both beloved brands on a single operating platform, and protect and grow union-represented jobs and economic development opportunities in Hawai'i, with a combined network that will provide more options and added international connectivity for travelers through airline partners including, the oneworld Alliance.
>
> "This combination is an exciting next step in our collective journey to provide a better travel experience for our guests and expand options for West Coast and Hawai'i travelers," said Ben Minicucci, Alaska Airlines CEO.  "We have a longstanding and deep respect for Hawaiian Airlines, for their role as a top employer in Hawai'i, and for how their brand and people carry the warm culture of aloha around the globe.  Our two airlines are powered by incredible employees, with 90+ year legacies and values grounded in caring for the special places and people that we serve. I am grateful to the more than 23,000 Alaska Airlines employees who are proud to have served Hawai'i for over 16 years, and we are fully committed to investing in the communities of Hawai'i and maintaining robust Neighbor Island service that Hawaiian Airlines travelers have come to expect.  We look forward to deepening this stewardship as our airlines come together, while providing unmatched value to customers, employees, communities and owners."
>
> "Since 1929, Hawaiian Airlines has been an integral part of life in Hawai'i, and together with Alaska Airlines we will be able to deliver more for our guests, employees and the communities that we serve," said Peter Ingram, Hawaiian

Airlines President and CEO. "In Alaska Airlines, we are joining an airline that has long served Hawai'i, and has a complementary network and a shared culture of service. With the additional scale and resources that this transaction with Alaska Airlines brings, we will be able to accelerate investments in our guest experience and technology, while maintaining the Hawaiian Airlines brand. We are also pleased to deliver significant, immediate and compelling value to our shareholders through this all-cash transaction. Together, Hawaiian Airlines and Alaska Airlines can bring our authentic brands of hospitality to more of the world while continuing to serve our valued local communities."

**Complementary Networks and Greater Choice for Alaska Airlines and Hawaiian Airlines' Combined 54.7 million Annual Passengers**

The combination of complementary domestic, international, and cargo networks is positioned to enhance competition and expand choice for consumers on the West Coast and throughout the Hawaiian Islands through:

- *Preserving outstanding brands:* The combined airline will maintain both industry-leading Alaska Airlines and Hawaiian Airlines brands while integrating into a single operating platform, enabling the remarkable service and hospitality of each to be enjoyed by passengers with continued excellence in operational reliability, trust and guest satisfaction for which both companies have been consistently recognized.

- An enhanced product offering for a wide range of consumers: The combination preserves and expands high-quality, best-in-class product offerings with price points to make air travel accessible to a wide range of consumers across a range of cabin classes, including greater choice between Alaska Airlines' high-value, low-fare options and Hawaiian Airlines' international and long-haul product on par with network carriers.

- Complementary networks expand travel options: Passengers traveling throughout the Continental U.S., U.S. West Coast and across the Pacific will benefit from more choice and increased connectivity across both airlines' networks, with service to 138 destinations including non-stop service to 29 top international destinations in the Americas, Asia, Australia and the South Pacific, and combined access to over 1,200 destinations through the oneworld Alliance.

- Expanded service for Hawai'i: For Hawai'i residents, the combination will expand service and convenience by tripling the number of destinations throughout North America that can be reached nonstop or one stop from the Islands, while maintaining robust Neighbor Island service and increasing air cargo capacity.

6

- Strategic Honolulu hub: Honolulu will become a key Alaska Airlines hub, enabling greater international connectivity for West Coast travelers throughout the Asia-Pacific region with one-stop service through Hawaiʻi.

- Increased loyalty program benefits: The transaction will connect Hawaiian Airlines' loyalty members with enhanced benefits through an industry-leading loyalty program for the combined airline, including the ability to earn and redeem miles on 29 global partners and receive elite benefits on the full complement of oneworld Alliance airlines, expanded global lounge access and benefits of the combined program's co-brand credit card.

**Delivering Substantial Benefits for Employees and Communities in Hawaiʻi**

As one of Hawaiʻi's largest employers, Hawaiian Airlines has a long legacy of commitment to its employees, who shaped the company over its 94-year history, and to local communities, culture, and the natural environment. As an integrated company, Alaska Airlines and Hawaiian Airlines will continue this stewardship and maintain a strong presence and investment in Hawaiʻi. The combined company will drive:

- *Growth in union-represented jobs: Maintain and grow union-represented jobs in Hawaiʻi, including preserving pilot, flight attendant, and maintenance bases in Honolulu and airport operations and cargo throughout the state.*

- *Strong operational presence:* Maintain a strong operations presence with local leadership and a regional headquarters in Hawaiʻi to support the combined airlines' network.

- *Opportunities for employees*: Provide more opportunities for career advancement, competitive pay and benefits, and geographic mobility for employees.

- *Expansion of workforce development initiatives:* Continue and expand access to workforce development initiatives, including Hawaiian Airlines' partnership with the Honolulu Community College Aeronautics Maintenance Technology Program and Alaska Airlines' Ascend Pilot Academy among others, to support future jobs and career opportunities in Hawaiʻi and beyond.

- *Investment in local communities:* Continue to invest in Hawaiʻi communities, combining and expanding the two airlines' commitments, and work with local communities and government to build a vibrant future for Hawaiʻi.

- *Perpetuation of culture:* Committed to promoting regenerative tourism in the Hawaiian Islands and investing in Hawaiian language and culture, continuing and building upon Hawaiian Airlines' existing programs.

**Becoming an Even More Sustainable Combined Airline**

Alaska Airlines is committed to building upon both Alaska Airlines' and Hawaiian Airlines' strong commitments to environmental stewardship, including Alaska Airlines' five-part path to net zero by 2040 and sustainability goals in areas of carbon emissions and fuel efficiency, waste, and healthy ecosystems. In 2022, Alaska Airlines made its largest Boeing fleet order in its 90-year history, focused on the Boeing 737-MAX aircraft, which are 25% more fuel-efficient on a seat-by-seat basis than the aircraft they replace, and continued to expand use of route optimization software to help dispatchers develop routes that save fuel, time, and emissions. Both airlines are actively working to advance the market for sustainable aviation fuel (SAF) in their respective geographies. These climate-focused efforts will continue, including continued investment in local sourcing.

**Compelling Strategic and Financial Rationale, Generating Outsized Value Creation**

The combination fits strategically with Alaska Airlines' sustained focus on expanding options for West Coast travelers and creates an important new platform to further enhance Alaska Airlines' above industry-average organic growth. The transaction is designed to deliver attractive value creation for Alaska Airlines' shareholders while providing a compelling premium for Hawaiian Airlines shareholders.

- All-cash transaction of $18.00 per share for a total equity value of $1.0 billion provides a compelling premium for Hawaiian Airlines shareholders.

- Transaction multiple of 0.7 times revenue, approximately one third the average of recent airline transactions.

- Approximately $235 million of expected run-rate synergies reflect a conservative estimate of the transaction's synergy potential; these exclude other identified upside opportunities that could be realized.

- Expected to generate high single digit earnings accretion for Alaska Airlines within the first two years (high-teens three+ years) post-close and mid-teens ROIC by year three, excluding integration costs, with returns above Alaska Airlines' cost of capital.

- No anticipated material impact on long-term balance sheet metrics, with return to target leverage levels expected within 24 months.

**Conditions to Close**

The transaction agreement has been approved by both boards. The acquisition is conditioned on required regulatory approvals, approval by Hawaiian Holdings, Inc. shareholders (which is expected to be sought in the first quarter of 2024), and other customary closing conditions. It is expected to close in 12-18 months. The combined organization will be based in Seattle under the leadership of Alaska Airlines CEO Ben Minicucci. A dedicated leadership team will be established to focus on integration planning.

**Advisors**

BofA Securities and PJT Partners are serving as financial advisors and O'Melveny & Myers LLP is serving as legal advisor to Alaska Airlines. Barclays is serving as financial advisor and Wilson Sonsini Goodrich & Rosati, Professional Corporation is serving as legal advisor to Hawaiian Airlines.

**The Materially Incomplete and Misleading Proxy Statement**

25. The Board caused to be filed the materially incomplete and misleading Proxy Statement with the SEC on January 9, 2024. The Proxy Statement, which recommends that Hawaiian stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (a) the Company's financial forecasts; (b) the financial analyses that support the fairness opinion provided by the Company's financial advisor, Barclays Capital Inc. ("Barclays"); and (c) potential conflicts of interest faced by Barclays and Company insiders.

*Material Misrepresentations and/or Omissions Concerning the Company's Financial Forecasts*

26. The Proxy Statement fails to disclose material information concerning the Company's financial forecasts.

27. As an initial matter, for each of Hawaiian's "August 2023 Long-Term Plan" and "September 2023 Long-Term Plan," the Proxy Statement fails to disclose the same metrics as those set forth in the Company's "November 2023 Long-Term Plan." Notably, these metrics include:

9

(a) Adjusted EBIT; (b) Unlevered Free Cash Flow and all underlying line items; and (c) Tax Savings from Net Operating Loss Utilization .

28.     The Proxy Statement fails to disclose: (a) Hawaiian management's preliminary draft of the Company's long-term operating and financial plan (the "Preliminary Projections"); (b) the underlying assumptions and various execution and other risks to realizing the Preliminary Projections; and (c) the feedback on the Preliminary Projections provided by the executive committee of the Board (the "Executive Committee") that was ultimately incorporated into management's August 2023 Long-Term Plan.[3]

29.     The Proxy Statement further fails to disclose the assumptions underlying each iteration of the Company's financial projections.  Specifically, with respect to the August 2023 Long-Term Plan, the Proxy Statement fails to disclose:

> (1) growth in premium aircraft seats, stronger unit revenue inflation for North America travel and generally consistent revenues for international travel over the performance period; (2) certain other revenue opportunities from new products and merchandising improvements; (3) labor costs based on agreed contract terms, with labor productivity gradually advancing toward pre-pandemic levels and slower non-contract headcount growth over the performance period; (4) fuel costs based on the then-current fuel curve and an assumed one percent reduction in fuel usage over the performance period; (5) a three percent annual inflation rate applied to approximately 10 percent of overall operating expenses; and (6) certain other cost saving opportunities.[4]

30.     With respect to the September 2023 Long-Term Plan, the Proxy Statement fails to disclose the "updated assumptions underlying [the Company's] cargo business with Amazon[.]"[5]

---

[3] *See* Proxy Statement at 34.

[4] *Id.* at 53.

[5] *Id.* at 54.

10

31. With respect to the November 2023 Long-Term Plan, the Proxy Statement fails to disclose the "specific operating and financial impacts of the External Factors"[6] and the "updated fuel cost curve."[7]

32. According to the Proxy Statement, on October 25, 2023, Alaska Air lowered its proposed purchase price for the Company from $20.00 per share in cash (the "Initial Proposal") to $17.00 per share in cash. Alaska Air apparently accounted for the lowered purchase price based on "(1) the higher capital expenditures contemplated by the September 2023 Long-Term Plan than those assumed by Alaska for the Initial Proposal; and (2) the lower profitability estimates for Hawaiian during 2024 and 2025 contemplated by the September 2023 Long-Term Plan as compared to Alaska's assumptions underlying the Initial Proposal."[8] Nonetheless, the September 2023 Long-Term Plan includes higher values for the disclosed metrics – Revenue and Adjusted EBITDAR – rendering the statements made by Alaska Air inconsistent with the September 2023 Long-Term Plan disclosed in the Proxy Statement. The capital expenditures and the lower profitability estimates during 2024 and 2025 contemplated by the September 2023 Long-Term Plan must therefore also be disclosed to stockholders.

33. The Proxy Statement further fails to disclose the line items underlying Hawaiian's forecasted Adjusted EBITDAR for each of the August 2023 Long-Term Plan, September 2023 Long-Term Plan, and November 2023 Long-Term Plan.

---

[6] The "External Factors" are defined as "(1) the devasting wildfires in Lahaina, Maui on August 8, 2023, which had significantly impacted travel demand to Maui in particular and Hawai'i more generally; and (2) anticipated accelerated removals and inspections of a significant portion of the PW1100G-JM engines, which power Hawaiian's A321neo aircraft." *Id.* at 37.

[7] *Id.*

[8] *Id.* at 37.

11

34. The Proxy Statement fails to disclose the line items underlying forecasted Adjusted EBIT for the November 2023 Long-Term Plan.

*Material Misrepresentations and/or Omissions Concerning the Financial Analyses Prepared by Barclays*

35. The Proxy Statement fails to disclose material information concerning the financial analyses prepared by Barclays.

36. As to the *Discounted Cash Flow Analysis* performed by Barclays, the Proxy Statement fails to disclose the: (a) the Company's terminal values; (b) the Company's total net debt; and (c) Hawaiian's total diluted shares outstanding.

37. As to the *Selected Comparable Company Analysis* performed by Barclays, the Proxy Statement fails to disclose the respective multiples and financial metrics for each company analyzed by the financial advisor.

38. As to the *Equity Research Price Targets Analysis* performed by Barclays, the Proxy Statement fails to disclose the individual price targets and their respective sources.

*Material Misrepresentations and/or Omissions Concerning Barclays' and Company Insiders' Potential Conflicts of Interest*

39. The Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by Barclays, including the compensation the financial advisor (or its affiliates) expects to receive given that "affiliates of Barclays also have a lending relationship with Hawaiian and an affiliate of Barclays is also a partner with Hawaiian for a cobranded credit card."[9]

40. The Proxy Statement also fails to disclose material information concerning potential conflicts of interest faced by Company insiders, including whether any of Alaska Air's proposals or indications of interest mentioned management retention in the combined company

---

[9] *Id.* at 50.

following the Proposed Transaction or the purchase of or participation in the equity of the surviving corporation.

41. The Proxy Statement further fails to disclose the details of any employment and retention-related discussions and negotiations that occurred between Hawaiian directors and officers and Alaska Air.

42. The omission of the above-referenced information renders statements in the "Financial Projections," "Opinion of Barclays Capital Inc.," "Background of the Merger," and "Interests of Hawaiian's Directors and Executive Officers in the Merger" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.

43. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of the Company will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Hawaiian**

44. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

45. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9.  Hawaiian is liable as the issuer of these statements.

46. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

47. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

48. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

49. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

50. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

51. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

52. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

53. The Individual Defendants acted as controlling persons of Hawaiian within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Hawaiian and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement,

they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

54. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

55. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the transactions giving rise to the violations as alleged herein and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

56. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

57. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of the Company, and against defendants, as

follows:

  A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Company stockholders;

  B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

  C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act;

  D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

  E. Granting such other relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: January 26, 2024    **LONG LAW, LLC**

    By: */s/ Brian D. Long*
      Brian D. Long (#4347)
      3828 Kennett Pike, Suite 208
      Wilmington, DE 19807
      Telephone: (302) 729-9100
      Email: BDLong@LongLawDE.com

      *Attorneys for Plaintiff*